IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KARA ANN JOHNSTON,

               Plaintiff,

                                24cv1613

       v.                      ELECTRONICALLY FILED

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

**MEMORANDUM OPINION**

## I. INTRODUCTION

Kara Ann  Johnston ("Plaintiff" or "Claimant") filed an appeal pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), seeking review of the final determination of a final administrative decision by the Commissioner of Social Security ("Commissioner") which denied Plaintiff Supplemental Security Income ("SSI") under title XVI and Disability Insurance Benefits ("DIB") of the Social Security Act ("Act").[1]  Consistent with the customary practice in the Western District of Pennsylvania, both parties submitted cross-motions for summary judgment in addition to the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ") decision denying Plaintiff benefits, the motions and briefs of the Parties, and the entire record, the Court finds that substantial evidence supports the ALJ's decision that Plaintiff is not disabled under the Act. Therefore, the Court will deny Plaintiff's motion for summary judgment, grant the

---

[1] Plaintiff filed her claim for DIB and SSI on March 17, 2023.

1

Commissioner's motion for summary judgment, and enter judgment in favor of the Commissioner.

## II.    PROCEDURAL HISTORY

On March 17, 2023, Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB") and simultaneously filed a Title XVI application for supplemental security income ("SSI") alleging a disability onset date of January 27, 2023. (ECF 4-2, -- hereinafter "Tr." -- p. 11).  Plaintiff's claims were denied initially on July 5, 2023, and upon reconsideration, were denied on September 8, 2023.  *Id.*  Plaintiff, who is and was represented by counsel, requested a hearing before an ALJ, and a hearing was held on August 15, 2024, during which Plaintiff and an impartial vocational expert (VE) testified *Id.* On August 28, 2024, the ALJ issued her decision in which she concluded Plaintiff was not disabled (Tr. 14-26). Plaintiff filed a request for review which was received by the Administration on September 26, 2024.  (Tr. p. 27), which was denied by the Appeals Council.  With the Appeals Council's denial, the decision of the ALJ became the final ruling of the Commissioner.  Plaintiff filed a Complaint in the United States District Court for the Western District of Pennsylvania seeking judicial review of the Commissioner's final decision denying benefits. Following briefing thereon, this matter is now ripe for review.  ECF 3.

## III.    STATEMENT OF THE CASE

### A. The ALJ Findings and Determination

Following a full hearing thereon, and review of the medical evidence, the ALJ made the following specific findings[2]:

---

2 See Tr, p. 12, *et seq.*

**1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2025.**

**2. The claimant has not engaged in substantial gainful activity since January 27, 2023, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).**

Earnings after the alleged onset date do not exceed the level of substantial gainful activity (SGA) (Exhibits B7D; B5D)

**3. The claimant has the following severe impairments: generalized anxiety disorder (GAD); depression; gender identity disorder; alcohol use disorder (partial remission); chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520(c) and 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

The record also documents impairments of reflux, high blood pressure, asthma, nicotine dependence, and restless leg syndrome. These conditions were treated with prescribed medication and appear to be amenable to proper control by adherence to recommended medical management and medication compliance. In addition, the record documents degenerative disc disease (DDD), but imaging reflects mild findings. Overall, the above impairments are nonsevere in that they establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to meet the basic demands of work activity. The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

The record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment. No physician of record has indicated findings, which would satisfy the requirements listed in 20 CFR Part 404, Subpart P, Appendix 1.

The claimant's COPD is evaluated under Listing 3.02 (Chronic Respiratory Disorders). However, the record does not establish FEV1 or FVC values equal to or less than the values specified in the listing., and further fails to note chronic impairment of gas exchange with DLCO values or PaO2/PaCO2 or SpO2 values less than or equal to those specified in the listing. Furthermore, the claimant has not had exacerbations or complications requiring three hospitalizations in a 12-month period. As such, the claimant's COPD does not rise to listing level severity.

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering, or applying information, the claimant has no limitation. Mental status findings revealed no cognitive deficits nor any deficits in the claimant's mental functioning. Findings also revealed the clamant had good insight and judgement, and the claimant's intellectual functioning was characterized as average (Exhibit B8F). There is no evidence of limitation in this area of functioning.

In interacting with others, the claimant has a moderate limitation. The claimant endorsed social anxiety and irritability. She also reported experiencing panic attacks when in crowds. She reported that she can shop by herself, but prefers not to be in public due to anxiety. However, she takes public transportation independently and she spends time with her grandmother. She also spends her days going to school and caring for her grandmother. Furthermore, mental status findings described the claimant's demeanor as cooperative, and reports noted her manner of relating was adequate (Exhibits B8F; B6E). The evidence supports moderate limitation in this area of functioning.

With regard to concentrating, persisting, or maintaining pace, the claimant has a mild limitation. The claimant reported some difficulty concentrating and finishing what she starts. However, the claimant reported that she is able to pay attention and mental status findings showed the claimant maintained intact concentration and attention (Exhibits B8F; B6E). The evidence supports mild limitation in this area of functioning.

As for adapting or managing oneself, the claimant has experienced a mild limitation. The claimant reported that she cares for her personal care needs, but has some difficulty dressing and bathing due to pain. She also reported that she prepares simple meals and performs light household chores. Mental status findings showed the claimant was alert and oriented during evaluations and no episodes of decompensation were noted in the record (Exhibits B8F; B6E). The evidence supports mild limitations in this area of functioning.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant has a conservative treatment history that has not involved a history of psychiatric hospitalization. She

has also maintained diverse activities of daily living and mental status findings were routinely intact. This evidence does not indicate that the claimant is limited to "marginal adjustment".

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds; balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally; never crawl. The claimant can never work at unprotected heights, never moving mechanical parts, and never operating a motor vehicle, in dust, odors, fumes and pulmonary irritants occasionally, in extreme cold occasionally, in extreme heat occasionally, and in vibration occasionally. The claimant is able to interact with supervisors occasionally; is able to interact with coworkers occasionally; and never interact with the public. The claimant cannot perform work requiring a specific production rate such as assembly line work or work requiring hourly quotas; and can only occasionally deal with changes in a routine work setting.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

The claimant alleges being unable to work due to the above-mentioned impairments. During the hearing, the claimant reported a history of shortness of breath and fatigue due to COPD and also reported experiencing back pain. The claimant also testified that she could stand for no more than 15 minutes and could lift up to 10 pounds. The claimant also testified that she has difficulty paying attention and focusing. She also testified that she experiences depression and crying spells; and she has been primarily unable to work in the past due to her mental symptoms.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not fully supported by the objective medical evidence.

Medical reports showed the claimant's reports of respiratory issues and fatigue, secondary to a history of COPD. The claimant testified that she uses an inhaler for her COPD; but she is not on oxygen despite her reported shortness of breath. Evaluation reports since the alleged onset date do not reflect respiratory issues nor any episodes of respiratory distress. Also, physical evaluation findings since the alleged onset date have been unremarkable for respiratory issues. Notably, a chest evaluation performed on March 22, 2023 showed the claimant's lungs were clear, with no rales, no rhonchi, and no wheezes. Findings also revealed the claimant's breathing was even and unlabored (Exhibit B6F/9). Despite the unremarkable findings in this regard, the undersigned has limited the claimant to light exertion, so as to prevent exacerbation of any respiratory issues. In addition, to further account for the claimant's reported respiratory issues, reported fatigue, and reported back pain, secondary to mild DDD, the claimant is limited to occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, no crawling, and occasional balancing, stooping, kneel, or crouching. As they claimant's physical impairments may affect her ability to negotiate hazards in the workplace, she should avoid work at unprotected heights or around moving mechanical parts, and she should never operate a motor vehicle. So as to avoid exacerbation of her reported respiratory issues, she should have no more than occasional exposure to dust, odors, fumes and pulmonary irritants, temperature extremes, or vibration.

With regard to the claimant's psychological impairments, reports showed the claimant was assessed with severe mental impairments. At a June 28, 2023 psychological consultative evaluation, the claimant reported a depressed mood, social anxiety with difficulty interacting with others, anxiety/worry, and concentration difficulties, but denied suicidal/homicidal ideation. Upon exam, the claimant's mood was described as "I'm here", and her affect was anxious, otherwise mental status findings were within normal limits (Exhibit B7F). Notably, the examiner found the claimant had normal thought processes, intact attention and concentration, intact memory, average intellectual functioning, and good insight and judgement (Exhibit B8F/3). In a

function report from April 27, 2023, the claimant reported experiencing anxiety and panic attacks when around others and when in social setting. In this same report, she reported difficulty handling stress and change. Subsequent examination reports do not reflect significant ongoing mental issues. However, the record documents the claimant's history of alcohol use disorder, but reports showed this impairment was in partial remission. The claimant also testified that she has this condition "under control" (Testimony). While mental status findings in the record are largely unremarkable, the claimant has considered findings of a depressed mood as well as the claimant's reports of difficulty social anxiety and difficultly handling stressful situations/managing change. In this regard, the undersigned limits the claimant to no more than occasional interaction with supervisors and coworkers, but no interaction with the public. In addition, considering the claimant's reports of difficulty handling stress/managing change, she cannot perform work requiring a specific production rate such as assembly line work or work requiring hourly quotas; and can only occasionally deal with changes in a routine work setting.

Of further significance, despite the claimant's allegations, it appears she maintains the ability to perform as variety of daily activities. Notably, the claimant reported being able to dress, bathe, and groom herself; cook and prepare food; clean and perform household chores; manage money; and take public transportation independently. She also stated that she can shop by herself, but prefers not to be in public due to anxiety. Nonetheless, she reported that she spends time with her grandmother and spends her days going to school and caring for her grandmothers. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The claimant's ability to participate in such activities are not consistent with her allegations of disabling functional limitations.

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:

The State agency medical doctors at the initial and reconsideration disability level found the claimant limited to medium exertion, with occasional ladders, occasional stooping and crawling, and all other frequent postural movements (Exhibits B2A; B3A; B6A; B7A). This finding is not persuasive as the evidence of record supports greater limits in the claimant's overall exertional capacity and supports environmental limitations given the claimant's history of respiratory issues and fatigue associated with COPD.

In a medical source statement dated June 28, 2023, Adrienne Gallo, Psy.D., opined the claimant had no limitation in understanding, remembering, or applying information (URA); moderate limitation in responding appropriately in routine work settings; and marked limitation in interacting with the public (Exhibit 8F). Dr. Gallo's opinion is mostly persuasive as the evidence supports no limits in URA and moderate limits in responding in the work setting. The undersigned finds moderate limits in social functioning is more appropriate as the claimant

reported being able to shop in stores, take public transportation independently, and interact with her family on a regular basis (Exhibit B6E; B8F/3). Nonetheless, to account for the claimant's deficits in this regard, the assigned residual functional capacity includes a restriction in working with the public.

In a medical assessment dated May 16, 2023, Kelsey Kumar, N.P. opined the claimant was limited to standing/walking 2 to 4 hours, frequent postural movements, no operations of a moving vehicle and frequent exposure to environmental conditions (Exhibit B7F/6-10). While Provider Kumar's opined postural and environmental limitations are generally consistent with the record, the record does not support standing/walking limitations to the extent opined by Provider Kumar considering the unremarkable musculoskeletal findings in the record. The undersigned finds that a limitation to light exertion sufficiently accounts for any standing/walking limitations. Accordingly, Dr. Kumar's opinion is partially persuasive.

In a mental impairment questionnaire dated March 12, 2024, Lori A. Fell, LCSW, opined the claimant would be most successful when working 15-20 hour per week and that the claimant works best when she does not exceed 5-hour shifts (Exhibit B10F/11). This opinion is not persuasive as such restrictions is not supported by any objective medical evidence nor did provider Fell provide a basis for her conclusions in this regard.

The medical source statement provided by Dana Veatch, CRNP on February 11, 2019 was submitted almost 4 years prior to the claimant's alleged onset date and is therefore outside of the period of consideration in connection with this application (Exhibit B1F). Due to the remote nature of this statement, no persuasive value is assigned to Provider Veatch's findings or opinions.

In sum, the above residual functional capacity assessment is supported by the objective medical evidence and the record as a whole. Even though the record indicates that the claimant has some limitations due to her impairments, the record also shows that the claimant's impairments are not as limiting as she alleges, and she maintains the ability to perform work related activities within the residual functional capacity assigned.

**6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The vocational expert classified the claimant's past relevant work as warehouse worker, storage laborer, DOT#922.687-058, medium per the DOT, SVP 2, unskilled, performed at medium; and industrial cleaner, DOT#381.687-018, medium per the DOT, SVP 2, unskilled, performed at light. This work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). Additionally, this work was not started and stopped in fewer than 30 calendar days (20 CFR 404.1560(b)(1)(ii) and 416.960(b)(1)(ii)). The vocational expert testified the claimant is unable to perform past relevant work under the assigned residual functional capacity. The undersigned accepts the testimony of the vocational

expert. Accordingly, the claimant is unable to perform past relevant work as actually or generally performed.

**7. The claimant was born on January 20, 1974 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).**

**8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).**

**9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).**

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20 and Rule 202.13. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: inserting machine operator, DOT#208.685-018, light, unskilled, with approximately 69,000 jobs in the national economy and folding machine operator, DOT#208.685-014, light, unskilled, with approximately 65,000 jobs in the national economy.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

**11. The claimant has not been under a disability, as defined in the Social Security Act, from January 27, 2023, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

<u>**DECISION**</u>

Based on the application for a period of disability and disability insurance benefits protectively filed on March 17, 2023, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income protectively filed on March 17, 2023, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

### B. Additional Information

In Plaintiff's appeal from the above findings and determination, Plaintiff broadly contends the denial of her disability claim is not supported by substantial evidence under the standards set forth by 42 U.S.C. § 405(g). More specifically, she argues that the ALJ's decision is arbitrary, contrary to law, and unsupported by substantial evidence. Plaintiff claims that: (1) the "ALJ's RFC [residual functional capacity] unreasonably failed to incorporate the full limiting effects of Plaintiff's mental impairments as demonstrated by the record[;]" and (2) "[t]he medical opinions and Plaintiff's testimony describe greater mental limitations than the ALJ's RFC, and the ALJ did not reasonably find that she has no work-related limitations related to understanding, remembering, applying information, concentrating, persisting, and maintaining pace." ECF 7.

In sum, Plaintiff contends that the ALJ's unfavorable decision is not based on substantial evidence.

In contrast to Plaintiff's position, the Commissioner contends that the decision denying Plaintiff benefits was based on substantial evidence, and therefore, must be affirmed. ECF 9.

## IV.    STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[3] and 1383(c)(3)[4].  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a), and vice versa.  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

---

[3] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[4] Section 1383(c)(3) provides in pertinent part:

> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

**A. *Substantial Evidence***

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (quoting *Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993) (quotin*g Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder.  *Rutheford*, 399 F.3d at 552.  In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ.  *Fargnoli v. Massarini*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87.") (parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings.  *Stewart v. Sec'y HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

### B. *Five Step Determination Process*

In order to qualify for DIB or SSI benefits, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and entitled to either DIB or

SSI benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520

and 416.920 (1995).  *See Sullivan*, 493 U.S. at 525.  The Court of Appeals for the Third Circuit

summarized this five-step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999):

> In step one, the Commissioner must determine whether the claimant is currently
> engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found
> to be engaged in substantial activity, the disability claim will be denied. *Bowen
> v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987). In
> step two, the Commissioner must determine whether the claimant is suffering from
> a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her
> impairments are "severe", she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's
> impairment to a list of impairments presumed severe enough to preclude any
> gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed
> impairment or its equivalent, the analysis proceeds to steps four and five. Step four
> requires the ALJ to consider whether the claimant retains the residual functional
> capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant
> bears the burden of demonstrating an inability to return to her past relevant work.
> *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994).
>
> If the claimant is unable to resume her former occupation, the evaluation moves to
> the final step. At this stage, the burden of production shifts to the Commissioner,
> who must demonstrate the claimant is capable of performing other available work
> in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show
> there are other jobs existing in significant numbers in the national economy which
> the claimant can perform, consistent with her medical impairments, age, education,
> past work experience, and residual functional capacity. The ALJ must analyze the
> cumulative effect of all the claimant's impairments in determining whether she is
> capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The
> ALJ will often seek the assistance of a vocational expert at this fifth step. *See,
> Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir.1984).

*Plummer*, 186 F.3d at 428.  *See also Rutherford*, 399 F.3d at 551 (explaining: "In the first four

steps the burden is on the claimant to show that she (1) is not currently engaged in gainful

employment because she (2) is suffering from a severe impairment (3) that is listed in an

appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to

return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered *per se* disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

> Further:
>
> When "mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019). The regulations set forth a "special technique" used for evaluating mental impairments. *See* 20 C.F. R. §§ 404.1520a, 416.920a. As part of that "special technique," a claimant's degree of functional limitation is rated in four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at § 404.1520a(c)(3), 416.920a(c)(3). A claimant's degree of limitation in these functional areas is rated using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id.* at §§ 404.1520a(c)(4), 416.920a(c)(4). The ratings in these four broad functional areas are used at step 2 to determine if the claimant has a severe mental impairment, and if the claimant has a severe mental impairment, the ratings are also used at step 3 to determine if the claimant's severe mental impairment meets or equals a listed mental disorder. *Id.* at §§ 404.1520a(d), 416.920a(d).

*Walizer v. Dudek*, Civ. No. 24-25, 2025 WL 964259, at *4 (M.D. Pa. Mar. 31, 2025).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways: (1) by introducing medical evidence that she is disabled *per se* because she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment; or (2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."

*Heckler v. Campbell*, 461 U.S. 458, 460-461 (1983) (*citing* 42 U.S.C. § 423 (d)(2)(A));

*Stunkard*, 841 F.2d at 59;  *Kangas*, 823 F.2d at 777 (Steps 1-3)).  In order to prove disability

under this second method, the plaintiff must first demonstrate the existence of a medically

determinable disability that precludes her from returning to her former job (Steps  1-2, 4).

*Stunkard,* 841 F.2d  at 59;  *Kangas*, 823 F.2d at 777.  Then, the claimant having shown that he

or she is unable to resume his or her previous employment, the burden shifts to the

Commissioner (Step 5) to prove that, given plaintiff's mental and/or physical limitations, age,

education and work experience, he or she is able to perform substantial gainful activity in jobs

available in the national economy.  *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203,

205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777.

> Moreover, the Commissioner/ALJ;

>> must "explicitly" weigh *all* relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43

(although ALJ may weigh conflicting medical and other evidence, he must give some indication

of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed

to mention significant contradictory evidence or findings, Court was left to wonder whether he

considered and rejected them, or failed to consider them at all, giving Court "little choice but to

remand for a comprehensive analysis of the evidence consistent with the requirements of the

applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a

residual functional capacity determination, the ALJ must consider all evidence before him. . . .

Although the ALJ may weigh the credibility of the evidence, he must give some indication of the

evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

### C. *Multiple Impairments*

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity'") (*citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. §§ 404.1523, 416.923).

Section 404.1523 of the Regulations, titled "Multiple impairments," provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (*see* § 404.1520).

20 C.F.R. § 404.1523.

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the

impairment must be considered before the Secretary denies the payment of disability benefits."

*Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) (citation omitted).  To that end, the ALJ

may not just make conclusory statements that the impairments do not equal a listed impairment

in combination or alone, but rather, is required to set forth the reasons for his or her decision, and

*specifically* explain why he or she found a claimant's impairments did not, alone or in

combination, equal in severity one of the listed impairments. *Fargnoli,* 247 F.3d at 40 n. 4 (citing

*Burnett*, 220 F.3d at 119-20).

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as

to whether the claimant is unable to return to past employment or perform substantial gainful

activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was

needed to make a sound determination." *Ferguson*, 765 F.2d at 36.

### D. *Claimant's Subjective Complaints of Impairments and Pain*

As explained by the court in *Schneider v. Berryhill*, Civ. No. 17-1299, 2019 WL 698471,

(W.D. Pa. Feb. 20, 2019):

> SSR 16-3p went into effect on March 28, 2016. SSR 16-3p supersedes SSR 96-7p,
> the previous rule governing the evaluation of subjective symptoms. *See*, SSR 16-
> 3p, 2016 WL 1119029 (March 16, 2016). SSR 16-3p removes the term
> "credibility," clarifying that the subjective symptom evaluation is not an
> examination of an individual's character but rather an ALJ is to "consider all of the
> evidence in an individual's record . . . to determine how symptoms limit ability to
> perform work-related activities." *Id*. at *2. In so doing, an ALJ is to use a two-step
> process. *Id*. at *2-33. Thus, after an ALJ finds "that the individual has a medically
> determinable impairment(s) that could reasonably be expected to produce those
> symptoms", the ALJ shall then consider all of the evidence in the record when
> he/she evaluates the intensity and persistence of symptoms to determine how
> "symptoms limit [the] ability to perform work-related activities." *Id*. In this regard,
> and to the extent relevant and available, the ALJ should consider objective medical
> evidence; individual statements; other medical sources; non-medical sources; the
> factors set forth in 20 C.F.R. § 404.1529(c)(3) and § 416.929(c)(3) including daily
> activities; the location, duration, frequency and intensity of pain or other symptoms;
> factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness

and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; treatment other than medication an individual receives or has received for relief of pain or other symptoms; any measures other than treatment used to relieve pain or other symptoms; and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4-7.

*Schneider*, 2019 WL 698471, at *2. *See also Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir.1993) (determining: "An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence.").

**E.** ***20 C.F.R. § 404.1520c***

Section 404.1520c addresses how the Commissioner/ALJ is to "consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c.

In *Lynch v. Commr. Soc. Sec.*, No. 23-1982, 2024 WL 2237961 (3d Cir. May 17, 2024), the United States Court of Appeals for the Third Circuit succinctly explained:

> Under regulations effective for claims filed after March 27, 2017, an ALJ must evaluate the persuasiveness of all medical opinion evidence and prior administrative medical findings based on five factors. *See* 20 C.F.R. § 404.1520c. The factors include: 1) supportability, 2) consistency, 3) relationship with the claimant, 4) specialization, and 5) other factors. *Id.*[3]

> The two most important factors are supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability is the extent to which a medical opinion uses relevant "objective medical evidence and supporting explanations." *Id.* § 404.1520c(c)(1). Consistency looks to how the medical opinion accords with the other medical and nonmedical sources on record. *Id.* § 404.1520c(c)(2). An ALJ must articulate how he or she considered both supportability and consistency when making a determination of persuasiveness for each medical opinion source. *Id.* § 404.1520c(b)(2). An ALJ may, but is not required to, explain how the other three factors weigh into a decision of persuasiveness. *Id.*

> In assessing the ALJ's decision, the report, "read as a whole," must "illustrate[ ] that the ALJ considered the appropriate factors in reaching the conclusion[s]." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The depth of explanation

required is not extensive so long as "there is sufficient development of the record and explanation of findings to permit meaningful review." *Id.* An ALJ is "free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014).

> [footnote 3: Prior to 2017, treating source opinions were given controlling weight. *See Cotter,* 642 F.2d at 704.]

*Lynch*, 2024 WL 2237961, at *2.

## V. DISCUSSION

### A. Whether the RFC unreasonably failed to incorporate the full limiting effects of Plaintiff's impairments as demonstrated by the record

In her brief in support of her motion for summary judgment, Plaintiff first contends, "[t]he ALJ's RFC unreasonably failed to incorporate the full limiting effects of Plaintiff's impairments as demonstrated by the record." ECF 7, p. 5. In support of this argument, Plaintiff correctly notes, that the RFC "must accurately describe, based on all the evidence, the claimant's maximum abilities to perform sustained full-time employment." Id., see § 404.1545(e); and SSR 96-8p. The Plaintiff further claims that the ALJ's RFC finding is "inextricably intertwined" with his "obligation to appropriately evaluate the evidence, generally, and the opinion evidence, specifically." ECF 7, p. 5-6.

The Commissioner counters that the ALJ reasonably accounted for all of Plaintiff's limitations and points out that Plaintiff failed to argue and support: (1) that her subjective symptoms were consistent with record as a whole; and (2) how the ALJ erred in assessing Plaintiff's allegations of disabling unidentified symptoms. ECF, p. 10.

In a nutshell, Plaintiff's appellate argument (and the summary of her medical record) focuses singularly on her mental health impairments. Plaintiff's mental impairments include:

generalized anxiety disorder (GAD), depression, gender identity disorder, and alcohol use disorder (partial remission). Plaintiff testified that her mental state is significantly compromised because of the "great deal of unease [she experiences] over gender dysphoria." ECF 7, p. 2. Plaintiff's therapist (Lori Fell) concluded that Plaintiff was "unable to meet competitive standards in her ability to complete a normal workday and workweek . . .". Id. During an independent psychological examination, the SSA examiner (Dr. Gallo) opined that Plaintiff had a "marked limitation" in her interactions with the public and a "moderate limitation" when it came to responding appropriately to usual work situations and changes in work routines. ECF 7, p. 3.

Plaintiff suggests that the above information constitutes evidence which establishes greater limitations than the ALJ's RFC finding. Id. Plaintiff further clams this evidence proves that Plaintiff is disabled and suggests that because the ALJ failed to evaluate Therapist Fell's full opinion in violation of the law, the ALJ found Therapist Fell's opinion unpersuasive. Simply stated, Plaintiff argue the ALJ's "highly selective references to the record to support a finding of nondisability [sic.] is not substantial evidence supporting the decision." Id. p. 9.

In contrast, the Commissioner notes that there was evidence in the record which demonstrated that Therapist Fell completed a questionnaire which contradicted some of the Plaintiff's subjective complaints, and Dr. Gallo noted that although Plaintiff's medical record contained references to her struggles with alcohol, it was "devoid of any [other] complaints." ECF 9, p. 8. The Commissioner also notes that other providers like Nurse Tatangelo never mentioned Plaintiff complaining of social anxiety or trouble focusing other than on one occasion when Plaintiff asked how to obtain a medical marijuana card for her anxiety after experiencing stomach issues related to alcohol consumption. Id. The Commission noted that Psychologist

Long opined that Plaintiff's mental health impairments resulted in "mild" limitations and Dr. Gallo and Psychologist Virginia Martin (an IME expert) concurred with the "mild" limitation assessment. Id., p. 7. Thus, the Commissioner concedes that Plaintiff had limitations in work-related mental functioning as noted by Therapist Fell, but further notes that even Fell indicated Plaintiff's limitations were "no more than moderate."

After reviewing the entire record, as this Court is required to do by law,[5] the Court notes that Plaintiff had a history of substance abuse along with a history of DUIs, mandatory treatment programs for violations of her probation, and was part of a support group for severe alcohol abuse disorder. Plaintiff had worked long term in the auto sales industry but due in part to her probation and revoked driver's license, began working full-time as a sorter at Amazon. About a year before her alleged disability onset date (January 27, 2023), Plaintiff told her family about her transition, began hormone treatment to affirm her gender, joined a gender support group, began a new relationship following her divorce, but ran into some difficulties when her sobriety treatment attendance began to lag. This evidence provided the ALJ with a more complete picture of Plaintiff and Plaintiff's mental state in the months leading up to her disability onset date.

With respect to Therapist Fell, the ALJ stated in finding of fact number 5 that Fell's opinion was unpersuasive with respect to Plaintiff's work as such restrictions because the work restrictions were not supported by any objective medical evidence nor did provider Fell provide a basis for her conclusions in this regard. The ALJ's finding is overwhelmingly supported by all of

---

5 *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (Despite the deference due to administrative decisions in disability benefit cases, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981).).

the other medical evidence from Fell, Long, Gallo, and Kumar. Equally important, Plaintiff, on appeal to this Court, failed to cite to any proof from the record to corroborate Fell's finding suggesting Plaintiff should work only 15-20 hours per week with a shift not to exceed 5 hours due to her mental health impairments.

All of the above demonstrates to this Court that with respect to the two most important factors – supportability and consistency – the ALJ properly evaluated the persuasiveness of all medical opinion evidence and prior administrative medical findings as required by 20 C.F.R. § 404.1520c and *Lynch* to arrive at his conclusion.

In addition, because mental impairments are at issue, the "special technique" set forth in the regulations note that Plaintiff's degree of functional limitation should have been rated in four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. §§ 404.1520a, 416.920a. The also Court finds that substantial evidence exists in the record which supports the ALJ's finding that Plaintiff's mental impairments included generalized anxiety disorder (GAD), depression, gender identity disorder, and alcohol use disorder (partial remission), and that these mental health impairments are "non-severe in that they establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to meet the basic demands of work activity." Finding of Fact No. 3.

The Court, based on substantial evidence of record further concurs with the ALJ in findin, that Plaintiff's "mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function

independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." Finding of Fact. No. 4.  As noted above, none of the medical experts – whether they were Plaintiff's treating providers or independent evaluators of the Plaintiff -- proffered any evidence that Plaintiff suffered from either an extreme or a marked limitation due to her mental impairment(s).

Although "[t]he key question when reviewing the ALJ's step two determination is not whether Plaintiff's impairments were in fact severe, but, whether substantial evidence supports the ALJ's finding that those impairments were not severe[,]" *Golubosky v. Comm'r of Soc. Sec.*, *No. 13-196, 2014 WL 3943029*, slip op. at *3 (W.D. Pa. Aug. 12, 2014), it is Plaintiff who "retains the burden of showing that an impairment is severe." *Bowen v. Yuckert*, 482 U.S. 137, *146 n.5*. Here, Plaintiff simply argues in conclusory fashion that the ALJ unreasonably failed to incorporate the full limiting effects of her impairments, but Plaintiff failed to meet her burden of proving this as this Court has outlined above, and thus, Plaintiff has offered this Court no basis to reject the ALJ's RFC as erroneous.

**B. Whether "[t]he medical opinions and Plaintiff's testimony describe greater mental limitations than the ALJ's RFC, and the ALJ did not reasonably find that she has no work-related limitations related to understanding, remembering, applying information, concentrating, persisting, and maintaining pace."**

In *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198 (3d Cir. 2019), the United States Court of Appeals for the Third Circuit held:

> A limitation to "simple tasks" is fundamentally the same as one "to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]" (App. at 33-34;) *see Davis v. Berryhill*, 743 F. App'x 846, 850 (9th Cir. 2018) (treating "understanding, remembering, and carrying out only simple

instructions" as equivalent to "simple tasks"); *Richards v. Colvin*, 640 F. App'x 786, 790 (10th Cir. 2016) (referring to a limitation "to understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions" as a "simple-work limitation[ ]"). Indeed, both formulations — the ALJ's and the more concise phrase "simple tasks" — relate to mental abilities necessary to perform "unskilled work." See 20 C.F.R. §§ 404.1568(a), 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."); SSR 96-9P, 1996 WL 374185, at *9 (July 2, 1996) (concluding that "unskilled work" requires "[u]nderstanding, remembering, and carrying out simple instructions" and "[m]aking ... simple work-related decisions"); cf. Richards, 640 F. App'x at 790 (treating "simple-work limitations" as similar to "unskilled work" limitations). So the parties' reliance on case law related to "simple tasks" is appropriate and helpful.

*Hess,* 932 F.3d , 210–11.

Turning to the instant matter, in Finding of Fact No. 5, the ALJ stated, in relevant part:

> ". . . [T]he undersigned limits the claimant to no more than occasional interaction with supervisors and coworkers, but no interaction with the public. In addition, considering the claimant's reports of difficulty handling stress/managing change, she cannot perform work requiring a specific production rate such as assembly line work or work requiring hourly quotas; and can only occasionally deal with changes in a routine work setting.

> Of further significance, despite the claimant's allegations, it appears she maintains the ability to perform as variety of daily activities. Notably, the claimant reported being able to dress, bathe, and groom herself; cook and prepare food; clean and perform household chores; manage money; and take public transportation independently. She also stated that she can shop by herself, but prefers not to be in public due to anxiety. Nonetheless, she reported that she spends time with her grandmother and spends her days going to school and caring for her grandmothers. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The claimant's ability to participate in such activities are not consistent with her allegations of disabling functional limitations.

Even though the record indicates that the ALJ determined Plaintiff does possess some

limitations due to her mental impairments stemming from her GAD, depression, gender identity

25

disorder, and alcohol use disorder, the record also irrefutably demonstrates and was discussed by the ALJ that Plaintiff's impairments are not as limiting as she alleges on appeal. Moreover, the record and the ALJ's comments in the Findings of Fact provide a solid basis for finding that substantial evidence exists demonstrating Plaintiff's ability to perform work related activities within the residual functional capacity the ALJ assigned.

**VI. CONCLUSION**

The Court finds that ALJ's decision/conclusion that Plaintiff "was not disabled," after thoughtful consideration of her age, education, work experience, and residual functional capacity, and the law governing same to be supported by substantial evidence. An appropriate Order shall follow.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

Dated: December 11, 2025

26